IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

JOHN BELL                      :    CIVIL ACTION
                               :    NO. 09-3347
                               :
          Plaintiff,           :
                               :
     v.                        :
                               :
TOWNSHIP OF CONCORD, et al.,   :
                               :
          Defendant.           :

M E M O R A N D U M

EDUARDO C. ROBRENO, J.                          January 10, 2011


## I.    INTRODUCTION

          Plaintiff John Bell ("Plaintiff") initiated this action

against Defendants Township of Concord (the "Township") and Manos

Kavadias ("Kavadias"), in his individual and official capacity as

Director of Code Enforcement, (collectively "Defendants"),

alleging violations of his civil rights under the Fourteenth

Amendment, pursuant to 42 U.S.C. §§ 1983 and 1988, and applicable

state law.[1]  Plaintiff seeks $100,000 in compensatory and

punitive damages, alleging that he was forced to defend a civil

action initiated by Defendants that was later dismissed, in which

_____

          [1]    This Court has jurisdiction, pursuant to 28 U.S.C. §§
1331 and 1341, over Plaintiff's federal claims and supplemental
jurisdiction, pursuant to 28 U.S.C. § 1367, over Plaintiff's
state law claims.

-1-

he denied being the proper defendant.

Before the Court is Defendants' Motion for Summary Judgment. First, the Court will address Plaintiff's § 1983 due process claims and determine whether summary judgment is appropriate. Second, the Court will address Plaintiff's Pennsylvania state law claims to determine whether summary judgment is appropriate.

For the reasons set forth below, the Court concludes that summary judgment will be granted as to both Defendants.

## II. BACKGROUND

On July 27, 2009, Plaintiff initiated this action against Defendants Township and Kavadias. Plaintiff's claims against Defendants, jointly and severally, are as follows: (1) Policy/Custom on the Use of Code Enforcement Lawsuits, in violation of §§ 1983, 1988 and the Fourteenth Amendment; (2) Failure to Train and Supervise, in violation of §§ 1983, 1988; (3) Abuse of judicial process, in violation of §§ 1983, 1988; and (4) Pendent State Claims: abuse of process, battery, intentional infliction of emotional distress, and due process, in violation Pennsylvania state law. (See Compl. ¶ 19-32.) Plaintiff alleges that he incurred "significant stress, anxiety, worry, and costs" due to Defendants' initiation of the state lawsuit. (See Compl. ¶ 16.)

The Plaintiff worked as a real estate agent for RE/MAX Integrity and represented the property owner (the "Seller") in the sale of 10 Pennock Drive, Boothwyn, Pennsylvania (the "Property"), within the Defendant Township. Pursuant to Concord Township Code (the "Code"), a property cannot be sold prior to issuance of a certificate of occupancy. (See Concord Township Code §§ 90-1 through 90-7, Defs.' Mot. Summ. J. Ex. A ("Def. Ex.").) Further, any violations of the Code must be corrected prior to issuance of the Certificate or, if the violations are not corrected prior to the sale, funds sufficient to correct the violation must be placed in escrow. (Id. at § 90-4(A).)

Plaintiff, or his real estate office, contacted the Township and inquired about the requirements for obtaining a certificate of occupancy so that the Seller could sell the Property. (Pl.'s Dep. 12.) In response, on October 14, 2008, Plaintiff received a fax from the Township detailing the requirements of the Code and including an application for a certificate of occupancy. (Fax From Township to Plaintiff, Def. Ex. B.) Plaintiff, or his office, filled out the application for the certificate and sent it back to the Township. On October 23, 2008, the Property was inspected by Defendant Kavadias, a code inspector of the Township's Code Enforcement Office. (Resale Inspection Form, Def. Ex. D.) At the conclusion of the inspection, Kavadias, noted that a "portion of the apron of the

driveway" needed replacement prior to issuance of the Certificate. (Id.)

On October 24, 2008, Plaintiff emailed Kavadias, "requesting permission to have 30 days after the settlement on 10/31/2008 for buyer to repair." (Emails Between Kavadias and Plaintiff, Def. Ex. U.) Kavadias responded that he is "not authorized to grant such a request," and that "repairs must be made prior to receipt of the [Certificate]." (Id.) Plaintiff then spoke to a manager in the Township's Code Office who sent Susan Fox to do a follow-up inspection of the Property and verify the damage. (Pl.'s Dep. 28.) A few days later, the manager contacted Plaintiff and told him that Fox found more damage and that the Seller would be required to make the repairs to receive the certificate of occupancy. (Id.)[2] The tenor of the conversation between the Plaintiff and the manager was "normal[ for] a business type of situation" and in the conversation with Kavadias, Kavadias sounded "somewhat irritated." (Id. at 29.)

On December 8, 2008, the Township informed Plaintiff, via a fax, that instead of making the repairs the Seller could put $600 in an escrow account, receive the Certificate, and proceed with the sale. (Fax from Township to Plaintiff, Def. Ex.

---

[2]      There is a dispute as to whether or not there was an "agreement" between the Township and Plaintiff because of this conversation. As this is a motion for summary judgment, the Court will construe the facts in the light most favorable for the Plaintiff and find that there was no additional conversation or communication than what is provided in these facts.

E.)  Plaintiff informed the Seller of the December 8, 2008 fax.
(Pl.'s Dep. 33.)  Plaintiff did not contact the Township in
response or the buyers of the Property.  (Id.)

Meanwhile, the sale of the Property closed on November
19, 2008, with no repairs made, escrow account, or certificate of
occupancy.  (HUD Forms, Def. Ex. F.)  At the time of the closing,
Plaintiff knew that a certificate of occupancy had not been
issued.  (Pl.'s Dep. 28)  Plaintiff alleges that it was the
Seller's decision to continue with the sale anyway.  (Id. at 30-
31.)  Plaintiff did not inform the buyers of the missing
certificate of occupancy. (Id. at 32.)

On January 12, 2009, the Township received a monthly
deed report for real estate transfers which notified the Township
that the Property had been sold.  (Monthly Deed Report, Def. Ex.
G.)  On March 13, 2009, the Township filed suit against Plaintiff
John Bell-Re/MAX Integrity in the Magisterial District Court 32-
2-40 (the "DJ Complaint"), alleging that the real estate firm
violated the Township Code.  (DJ Complaint, Def. Ex. H.)
Although the Code required that the Township notify Plaintiff
before filing action, the Township did not.  (Kavadias Dep. 46-
48.)  A hearing was scheduled for April 7, 2009.  (Hearing
Notice, Def. Ex. I.)  On March 13, 2009, Plaintiff notified the
magisterial court that he intended to present a defense.  (Notice
of Intent to Defend, Def. Ex. J.)

Plaintiff, acting pro se, contacted the Township solicitor, Hugh Donaghue, Esq., to say that he believed the Township mistakenly brought the DJ Complaint against him and his real estate firm instead of the Seller. (Pl.'s Dep. 36.) Donaghue responded, "if that is your defense, tell it to the judge." (Id.) Plaintiff hired counsel, and on March 19, 2009 Plaintiff's counsel reiterated to Donaghue that Plaintiff believed the DJ Complaint named the wrong person and that the Township should have named the Seller. (Letter from Plaintiff's Counsel to Township, Def. Ex. K.) Donaghue was also notified that Plaintiff intended to request subpeonas to have multiple Township employees appear at the hearing. (Donaghue Aff. 10., Def. Ex. L.)

On March 24, 2009, the Township withdrew the action and cc'd Plaintiff on its letter to the court. (Letter from Township to Magisterial District Court, Def. Ex. M.) Donaghue notified Plaintiff of the withdrawal on March 31, 2009. (Letter from Donaghue to Plaintiff's Counsel, Def. Ex. Q.) On March 31, 2009, Plaintiff sent a letter to Donaghue seeking $2,500 in attorney fees and $5,000 in alleged damages from the Township. (Letter from Plaintiff's Counsel to Donaghue, Def. Ex. R.)

On July 27, 2009, Plaintiff filed his complaint in this Court. On June 11, 2010, Defendants filed an answer, denying liability and averring that no acts violated Plaintiff's federal

or state rights.  Defendants asserted various affirmative

defenses, including but not limited to, failure to state a cause

of action, and absolute and qualified immunity.  (See Answer ¶¶

33-44.)

After discovery was completed, on March 19, 2010,

Defendants filed a motion for summary judgment pursuant to Fed.

R. Civ. P. 56(c), arguing that, as a matter of law, Plaintiff's

federal and state rights were not violated, and that Plaintiff

has not presented evidence that affords recovery.  (See Defs.'

Mot. Summ. J. 1-5.)  In response, Plaintiff contends that he

suffered emotional harm whereby Defendants used "the civil

complaint process to enforce violations of Township Codes[,]" in

violation of federal and state law.  (See Resp. 2-3.)  On June

10, 2010, Defendants filed a reply and, on June 15, 2010,

Plaintiff filed a sur-reply.


**III. DISCUSSION**

In their motion for summary judgment, Defendants argue

that: (1) Plaintiff has not suffered constitutional violations as

a matter of law; (2) Defendant Kavadias is protected by qualified

immunity; (3) Plaintiff fails to state a Monell claim; (4)

Plaintiff fails to state a claim for recovery under the

Pennsylvania State Constitution; and (5) under state law,

Plaintiff fails to state a claim for battery, abuse of process or

intentional infliction of emotional distress.  (See Defs.' Mot. Summ. J. 6-15.)

A. Summary Judgment Legal Standard

Summary judgment is appropriate if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  "A motion for summary judgment will not be defeated by 'the mere existence' of some disputed facts, but will be denied when there is a genuine issue of material fact."  Am. Eagle Outfitters v. Lyle & Scott Ltd., 584 F.3d 575, 581 (3d Cir. 2009) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-248 (1986)).  A fact is "material" if proof of its existence or non-existence might affect the outcome of the litigation, and a dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Anderson, 477 U.S. at 248.

In undertaking this analysis, the court views the facts proffered by the non-moving party as true and considers the facts in the light most favorable to the non-moving party.  "After making all reasonable inferences in the nonmoving party's favor, there is a genuine issue of material fact if a reasonable jury could find for the nonmoving party."  Pignataro v. Port Auth. of N.Y. & N.J., 593 F.3d 265, 268 (3d Cir. 2010) (citing Reliance Ins. Co. v. Moessner, 121 F.3d 895, 900 (3d Cir. 1997)).  While

the moving party bears the initial burden of showing the absence of a genuine issue of material fact, the non-moving party "may not rely merely on allegations or denials in its own pleading; rather, its response must—by affidavits or as otherwise provided in [Rule 56]—set out specific facts showing a genuine issue for trial."  Fed. R. Civ. P. 56(e)(2).

B. § 1983 Due Process Claims

To state a claim under 42 U.S.C. § 1983 a plaintiff must allege sufficient facts to show that: (1) the conduct complained of was committed by a person acting under color of state law; and (2) the conduct deprived the plaintiff of rights, privileges, or immunities secured by the Constitution or laws of the United States.

Here, Defendants do not deny that they were acting under color of state law.  Additionally, Plaintiff claims he was deprived his due process rights under the Fourteenth Amendment of the United States Constitution.  Thus, as the state action requirement is met, the Court now turns to analyze whether Defendants deprived Plaintiff of his due process rights.

The Due Process Clause of the Fourteenth Amendment provides that no State shall "deprive any person of life, liberty, or property, without due process of law."  U.S. Const. amend. XIV, § 1.  The Due Process Clause has both a procedural

and a substantive component, and Plaintiff's Complaint appears to allege a violation of both.[3]

### i) Procedural Due Process

Plaintiff alleges that Defendants violated his right to procedural due process. A court reviewing a procedural due process claim first determines whether the plaintiff asserts an interest protected by the Fourteenth Amendment. Mathews v. Eldridge, 424 U.S. 319 (1976); Renchenski v. Williams, 622 F.3d 315, 325 (3d Cir. 2010). "In analyzing a procedural due process claim, the first step is to determine whether the nature of the interest is one within the contemplation of the liberty or property language of the Fourteenth Amendment." Newman v. Beard, 617 F.3d 775, 782-83 (3d Cir. 2010) (quotations omitted) (citing Fuentes v. Shevin, 407 U.S. 67 (1972)).

"If the court concludes that such an interest exists, the next issue is whether the procedures provided to the plaintiff afforded that individual due process of law." Newman, 617 F.3d at 782-83. If the court determines "that the interest asserted is protected by the Due Process Clause, the question then becomes what process is due to protect it," and "whether the

_____

[3]     Plaintiff's arguments seem to suggest that the claim really is a § 1983 abuse of process claim. However, as he was never arrested, seized, detained or even fined, he would not be able to meet the requirements of such a claim. See DiBella v. Borough of Beachwood, 407 F.3d 599, 603 (3d Cir. 2005) (citing Torres v. McLaughlin, 163 F.3d 169 (3d Cir. 1998)).

procedures provided to the plaintiff afforded that individual due process of law." Id. (citing Morrissey v. Brewer, 408 U.S. 471, 481 (1972)). The fundamental requirement of due process is the opportunity to be heard "at a meaningful time and in a meaningful manner." Mathews v. Eldridge, 424 U.S. 319, 333 (1976). In only rare circumstances has the Supreme Court held that a hearing closely approximating a judicial trial is necessary. Id.

Here, Plaintiff alleges that Defendants attempted to "improperly and unlawfully fine the Plaintiff the amount of $1,000.00 per day and deny him peace and full enjoyment of life, liberty and property." (Pl. Resp. 6.) The only cognizable liberty or property interest here would be Plaintiff's property interest in keeping his money.[4] Under due process, what is important is that he had notice of the hearing where the judge would consider whether or not to take Plaintiff's property (i.e., to fine him). Defendants never deprived Plaintiff of his property interest because they had dropped the DJ Complaint and

---

[4] The Plaintiff also seems to be alluding to a liberty interest in not being improperly sued. However, Plaintiff does not point to any authority that recognizes such a right and I have extensively searched and found no such case law. While not binding, but persuasive, the Seventh Circuit has found that there is no such interest in not being improperly sued. Smart v. Board of Trustees, 34 F.3d 432, 434 (7th Cir. 1994)("If liberty is not at stake, it is difficult to see how either tort could be thought to invade an interest protected by the due process clause (life, liberty, or property) merely by virtue of its effect on the reputation or, like any suit, the pocketbook of the defendant.").

never received the fine amount they were seeking.  Further,
Defendants afforded Plaintiff the highest level of process there
is because before fining the Plaintiff and depriving him of any
property, Defendants brought the determination to the state court
where Plaintiff had notice and would have had a meaningful
opportunity to be heard.  The mere fact that Plaintiff did not
receive notice of filing of the DJ Complaint is not dispositive.
Thus, the process provided was clearly sufficient under the Due
Process Clause.

ii) <u>Substantive Due Process</u>

Plaintiff also alleges that Defendants violated his
right to substantive due process rights by wrongfully bringing
the DJ Complaint and suing him in state court.  "[T]he Due
Process Clause contains a substantive component that bars certain
arbitrary, wrongful government actions 'regardless of the
fairness of the procedures used to implement them.'"  Newman v.
Beard, 617 F.3d 775, 782 (3d Cir. 2010) (quoting Zinermon v.
Burch, 494 U.S. 113, 125 (1990)).

"[T]o prevail on a substantive due process claim, 'a
plaintiff must prove the particular interest at issue is
protected by the substantive due process clause and the
government's deprivation of that protected interest shocks the
conscience.'"  <u>Chambers v. School Dist. Of Philadelphia Bd. Of</u>

Educ., 587 F.3d 176, 190 (3d Cir. 2009) (quoting Chainey v. Street, 523 F.3d 200, 219 (3d Cir. 2008)). "[T]he core of the concept of due process is protection against arbitrary action and that only the most egregious official conduct can be said to be arbitrary in the constitutional sense." Chambers, 587 F.3d at 190 (quoting United Artists Theatre Circuit, Inc. v. Twp. of Warrington, 316 F.3d 392, 399 (3d Cir. 2003)(citing County of Sacramento v. Lewis, 523 U.S. 833, 845-46 (1998))).

"Furthermore, because 'the nature of the conduct that is sufficiently egregious to shock the conscience varies depending on the context,' a court must 'determine what level of conduct is egregious enough to amount to a constitutional violation and, then, whether there is sufficient evidence that [the defendant's] conduct rose to that level.'" Chambers, 587 F.3d at 190 (quoting Nicini v. Morra, 212 F.3d 798, 809 (3d Cir. 2000)).

Plaintiff alleges that he had a "fundamental right not to be sued by the local government under an Code that does not apply to plaintiff and is otherwise unlawful." (Pl. Resp. 6.) No court has recognized such a right to be fundamental. However, even assuming that there is such a fundamental right, the Defendants' conduct is not so egregious that it rises to a level that shocks the conscience. Indeed, even assuming all facts in favor of the Plaintiff, Defendants behavior does not come close

to this line.

In this case, Plaintiff, as the real estate agent for the Seller, applied for a certificate of occupancy that would allow the Seller to sell the Property. However, Defendant Kavadias told Plaintiff, the one that filed for the certificate, that the Seller would have to make a required repair in order to get the certificate of occupancy. The Seller did not repair the curb or post bond. Rather, the Seller sold the Property, with Plaintiff as her real estate agent, without the certificate, a violation of the Township's Code.

Kavadias, not knowing the sale had taken place, told the Plaintiff that instead of making the repairs the Seller could post bond for $600 and the Township would issue the required certificate of occupancy. On January 12, 2009, the Township received notice that the Property was sold without the issuance of a certificate of occupancy. It was then that Kavadias, brought an action against Plaintiff in state court to collect a fine for what Kavadias reasonably believed to be a violation of the Code.

Under the language of the Code, "the failure of any person, firm, partnership, corporation, association or governmental unit to comply with the regulations of this chapter" may be fined. (Code § 90-7, Def. Ex. A.) The Code also includes that "any person or entity who violates or permits the violation

of any provision of this chapter shall . . . pay the fine. . . ."
(Id.)

Plaintiff and his real estate firm, Re/MAX Integrity, had filed for the certificate of occupancy and Kavadias had been working with Plaintiff and his firm on the application, inspection, and in getting the repairs made. Also, Plaintiff was the Seller's real estate agent and, as such, is compensated and licensed to ensure that Seller's sale is done lawfully. Thus, it was not arbitrary or egregious for Kavadias to believe that Plaintiff was subject to liability under the Code and bring the DJ Complaint against Plaintiff and his firm.

Further, Plaintiff called the Township to say that it is the Seller that should be liable for the violation of the Code, and not Plaintiff. Even assuming Plaintiff's allegation that Donaghue responded by saying "if that is your defense, tell it to the judge," this does not show behavior that is so egregious or arbitrary that it shocks the conscience. Plaintiff does not point to any facts of record showing that Kavadias and Donaghue did not believe that Plaintiff violated the Code so the Township brought an action in state court to collect the fines.[5]

Thus, this action was not arbitrary as it was done for

_____

[5] The Court does not make a determination on whether or not the Code would apply to Plaintiff, but only determines that it was not so egregious for Defendants to believe that the Code applied to Plaintiff as to sustain a violation of Plaintiff's substantive due process rights.

the purpose of upholding the Code, a law in place to make sure that buyers are buying homes that are not in violation of any of the Township's building codes. Even when assuming all facts as alleged by Plaintiff, these actions do not come close to being so arbitrary or egregious as to shock the conscience.[6] Thus, when viewing all facts in the light most favorable to the Plaintiff, Defendants are entitled to judgment as a matter of law.

C. Pennsylvania State Law Claims

Plaintiff also brings four Pennsylvania state law claims: (1) due process violations under the Pennsylvania Constitution; (2) battery; (3) abuse of process; and (4) intentional infliction of emotional distress. Defendants argue that Plaintiff's state law claims fail as a matter of law.

---

[6]  "[Q]ualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Pearson v. Callahan, 129 S. Ct. 808, 818 (2009). "First, a court must decide whether the facts that a plaintiff has alleged . . . make out a violation of a constitutional right." Pearson, 129 S. Ct. at 815-816 (citing Saucier v. Katz, 533 U.S. 194, 201 (2001)). "Second, if the plaintiff has satisfied this first step, the court must decide whether the right at issue was 'clearly established' at the time of defendant's alleged misconduct." Pearson, 129 S. Ct. at 815-816 (citing Saucier, 533 U.S. at 201).
A district court may "exercise sound discretion in deciding which of the [following] two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." Pearson, 129 S. Ct. at 818. As the Court first found that Plaintiff fails to show that his due process rights were violated, Defendant Kavadias would be entitled to qualified immunity.

i) <u>Due Process Rights Under the Pennsylvania State</u>
<u>Constitution</u>

Pennsylvania courts do not recognize a cause of action
for monetary damages for alleged violations of the due process
rights provided under the Pennsylvania State Constitution. <u>Jones</u>
<u>v. City of Philadelphia</u>, 890 A.2d 1188, 1209 (Pa. Commw. Ct.
2006) (en banc) ("To date, neither Pennsylvania statutory
authority, nor appellate case law has authorized the award of
money damages for a violation of the Pennsylvania
Constitution."); <u>Pursel v. McCartney</u>, 2006 Pa. Dist. & Cnty. Dec.
LEXIS 260 (Pa. County Ct. 2006) (applying <u>Jones</u> to find that
"there is no cognizable cause of action for monetary damages for
alleged violation of Article I, Section 1 [the Due Process
Clause] of the Pennsylvania Constitution.").

Plaintiff cannot bring a claim for damages under the
Pennsylvania State Constitution. Thus, there is no genuine issue
of material fact as to Plaintiff's due process claim under the
Pennsylvania State Constitution. Defendants are entitled to
judgment as a matter of law.

ii) <u>Battery</u>

To state a claim for battery Plaintiff must show that
there is "a harmful or offensive contact with a person, resulting
from an act intended to cause plaintiff or a third person to
suffer such contact, or apprehension that such a contact is

imminent." <u>Herr v. Booten</u>, 580 A.2d 1115, 1117 (Pa. Super. Ct. 1990).  Here, Plaintiff does not allege any harmful or offensive contact, or any contact at all.  Nor does Plaintiff allege that he was placed in any apprehension of possible harmful or offensive contact by any of the Defendants.

Thus, there is no genuine issue of material fact as to Plaintiff's battery claim.  Defendants are entitled to judgment as a matter of law.

### iii) <u>Abuse of Process</u>

Under Pennsylvania common law, to succeed on an abuse of process claim a plaintiff must show that "the use of legal process against [plaintiff was] primarily to accomplish a purpose for which it is not designed." <u>Werner v. Plater-Zyberk</u>, 799 A.2d 776, 785 (Pa. Super. Ct. 2002).  Plaintiff must also show that he suffered harm as a result of the abuse of process.  <u>Rosen v. American Bank</u>, 627 A.2d 190, 192 (Pa. Super. Ct. 1993).

Unlike "malicious use of process," which may arise when someone "institutes a lawsuit with a malicious motive and lacking probable cause," an abuse of process occurs when the "legal process is utilized for some unlawful purpose, not one for which it was intended." <u>Shaffer v. Stewart</u>, 473 A.2d 1017, 1019 (Pa. 1984).[7]  "A cause of action for abuse of process requires some

---

[7]     The tort of abuse of process is sometimes confused with malicious use of prosecution which has a statutory basis.  Here,

definite act or threat not authorized by the process, or aimed at an objective not legitimate in the use of the process; there is no liability where the defendant has done nothing more than carry out the process to its authorized conclusion, even though with bad intentions. <u>Id.</u> (internal quotations and citations omitted).

"The improper purpose usually takes the form of coercion to obtain a collateral advantage, not properly involved in the proceeding itself such as the surrender of property or the payment of money by the use of the process as a threat or a club." <u>In re Larsen</u>, 616 A.2d 529, 593 (Pa. 1992). "There is, in other words, a form of extortion, and it is what is done in the course of negotiation, rather than the assurance of the process itself, which constitutes the tort." <u>Id.</u> (citations omitted). Also, "an incidental motive of spite or ulterior purpose of benefit to the defendant" would not be a sufficient improper purpose. <u>Rosen</u>, 627 A.2d at 192-93 (quoting Restatement (Second) of Torts, § 682, comment b).

Here, the question is whether Plaintiff has pointed to facts of record sufficient to show that Defendant Kavadias initiated the DJ Complaint for a purpose for which the Code was not intended but instead was a purpose of coercion or extortion. Even if Kavadias was annoyed, frustrated, or brought the DJ Complaint out of "spite" or through "bad intentions," his actions

---

Plaintiff has only alleged abuse of process so the later is not implicated.

would not satisfy the abuse of process requirements.  Plaintiff does not point to any facts which show that Kavadias acted with a purpose akin to coercion or extortion. Indeed, accepting Plaintiff's version of the facts and drawing all reasonable inferences for the Plaintiff, the most Plaintiff can show is that Kavadias, who seemed "somewhat frustrated" with Plaintiff, acted with a purpose that is similar to "spite" or "bad intentions."

Further, Kavadias' action in filing the DJ Complaint against the Plaintiff whom the Township believed violated the Code is consistent with the general purpose of the Code, which is to ensure that homes that are resold in the Township, are not in violation of the building code.  Plaintiff offers no evidence nor alleges that Kavadias had any personal grudge unrelated to the application of the certificate or that Kavadias filed the DJ Complaint for any other reason than to enforce the Code.  While Plaintiff argues that "Defendants used the Civil Complaint process against the [P]laintiff to obtain monies to fix a defect in a driveway."  (Pl.'s Resp. 14.), Plaintiff does not present facts to show this rose to the level of extortion.

Thus, there is no genuine issue of material fact as to Plaintiff's abuse of process claim.  Defendants are entitled to judgment as a matter of law.

iv)  <u>Intentional Infliction of Emotional Distress</u>

To bring a claim for intentional infliction of emotional distress "plaintiff must prove that the defendant, by extreme and outrageous conduct, intentionally or recklessly caused the plaintiff severe emotional distress."  Britt v. Chestnut Hill College, 632 A.2d 557, 559 n.2 (Pa. Super. Ct. 1993).

For the reasons the Defendants' conduct was not arbitrary or egregious (as discussed in the Substantive Due Process section), the Defendants' conduct, as alleged by the Plaintiff, does not reach the level of "extreme and outrageous."

Thus, there is no genuine issue of material fact as to Plaintiff's intentional infliction of emotional distress claim. Defendants are entitled to judgment as a matter of law.


**IV. CONCLUSION**

For the reasons stated above, summary judgment will be granted in favor of both Defendants, the Township of Concord and Manos Kavadias.  An appropriate order will follow.